

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 28, 2019

**VIA ECF**

The Honorable Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      **Re:**    ***United States v. Paul Dean*, 17 Cr. 398 (ER)**

Dear Judge Ramos:

      The Government respectfully submits this memorandum in advance of the sentencing of defendant Paul Dean, scheduled for January 31, 2018, at 2:30 p.m., in connection with his guilty plea to Count Two of the Indictment for conspiracy to commit bribery.  Specifically, Dean pleaded guilty to conspiring with others upon his retirement from the New York City Police Department ("NYPD") to pay bribes to members of the NYPD's License Division, his former subordinates, in order to secure those members' assistance in approving gun license applications as a means of advancing his own gun license "expediting" business.  For the reasons set forth below, a sentence consistent within the applicable Guidelines range would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

**I.**      **The Guidelines Range**

      As set forth in the Presentence Report ("PSR"), the parties and the United States Probation Office (the "Probation Office") agree that the defendant falls within Criminal History Category I, the offense level is 15, and the appropriate United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range is 18 to 24 months of imprisonment. (PSR ¶¶ 7, 122.)

      The Probation Office recommends a sentence of 18 months of incarceration, the bottom of the Guidelines range.  (*See* PSR at 30.)  In his sentencing memorandum, the defendant requests that the Court impose a non-incarceratory sentence, based on the factors set forth in Title 18, United States Code, Section 3553(a).  (*See* Def. Mem. 10-18.)  As set forth below, the Government submits that the Court should impose a sentence of incarceration consistent with the applicable Guidelines range.

## II.      Applicable Law

The Guidelines continue to provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005), although they are no longer mandatory.  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" – that range "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 552 U.S. 38, 49 (2007).  As the Second Circuit has noted, although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice."  *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must then consider the seven factors outlined in Title 18, United States Code, Section 3553(a):  (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims."  18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)      to afford adequate deterrence to criminal conduct;

(C)      to protect the public from further crimes of the defendant; and

(D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  To the extent the Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall,* 552 U.S. at 50).

## III.      Discussion

The Government submits that a Guidelines sentence is appropriate in light of the defendant's serious abuse of his position, a leadership role within the NYPD, and corruption of an important government process intended to protect public safety, namely, the process of regulating who could have access to guns in New York City.

Such a sentence would "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense."  *See* 18 U.S.C. § 3553(a)(2)(A).  As a high-

ranking police officer charged with supervising the NYPD's License Division, Dean helped preside over a period of rampant corruption. It was disturbing enough that Dean joined in this corrupt culture – in which he and others provided gun licenses to business owners not based on need or merit, but based on what gifts and other favors those businesses could bestow upon Dean and his colleagues – and permitted it to flourish on his watch. But Dean's conduct grew worse when he went further, choosing to capitalize on the corruption upon his retirement by plotting to compete with bribe-paying expediters through his own bribery scheme. Indeed, Dean admits that "he was tired of watching his fellow officers, expeditors like Alex 'Shaya' Lichtenstein, and attorneys like John Chambers, make thousands of dollars for 'processing' gun licenses while it was Mr. Dean who was doing all of the work to keep his fellow officers get rich scheme afloat," so he decided "he could do the same" by replicating the bribery scheme set up by the expediters and making even more money. (Def. Mem. 6.) To pursue this plan, he schemed to retire and pay bribes to his own former subordinate NYPD officers, David Villanueva and Richard Ochetal, and teamed up with another subordinate officer, Robert Espinel, to be his business partner.

The entirety of this conduct, beginning with Dean's participation in the licenses-for-favors scheme and culminating as it did in his efforts to become a corrupt expediter himself, represents a remarkably serious offense and abuse of trust – one that interfered with the NYPD's responsibility in a core area of public safety, the proper administration of the City's gun laws. As a result of the corruption in the License Division, unqualified persons were permitted to obtain guns in New York City, leading at times to tragic consequences. Dean's role, including as a supervisor, in perpetuating rather than preventing this grave misconduct warrants just punishment.

Dean's attempts to minimize his conduct only emphasize the need for a sentence reflecting the seriousness of this offense. In his own sentencing submission, Dean claims only that he was not responsible for *initiating* this criminal conduct, because (1) "corruption was always occurring with the licensing division," (2) he knew that Villanueva and Ochetal were already taking bribes from others, and (3) "[a]lthough against written internal policy," somehow "receiving gifts such as alcohol, meals, jewelry, and tickets for performing policing functions (i.e., granting gun licenses) was never really looked at as criminal, as opposed to receiving cash." (Def. Mem. 5.) The misconduct catalogued in Dean's submission only further demonstrates Dean's knowing tolerance of and participation in this inexcusable corruption as a high-level supervisor.

Of course, the fact that Dean did not act alone, but rather, was one of several NYPD officers who contributed to the corruption in the License Division does not mitigate his conduct. Dean personally participated in accepting illicit gifts, including numerous in-kind benefits, and a $1000 cash payment from "gun license expediters." These expediters charged their "clients" high fees in exchange for their ability to secure gun licenses from the NYPD, and in turn, achieved those results by routinely bribing members of the License Division.[1] Dean decided not only to take their gifts as a cop, but to go a step further and join them in bribing of police officers

---

[1] These expediters – Shaya Lichtenstein, Frank Soohoo, and John Chambers – have been prosecuted in this District. Lichtenstein and Chambers were sentenced to substantial terms of incarceration, as discussed in the PSR. Soohoo's case remains pending.

upon his own retirement.  Whether the bribes would be paid in cash or through gifts and other benefits is of no moment. Such a fallacy has no basis in law, no basis in the NYPD's Patrol Guide – which has long expressly forbidden such gifts – and its most foundational training, and any claimed confusion over this purported distinction has no basis in the factual record.

General deterrence is also a particularly relevant factor in this case.  It is important that any sentence imposed on the defendant send a message to others that exchanging official power for financial gain will not to be tolerated.  *See* 18 U.S.C. § 3553(a)(2)(B) (sentencing court shall consider the need "to afford adequate deterrence to criminal conduct").  Dean's own record demonstrates that despite his pride in serving as a leader in the NYPD, he grew willing to corrupt that very institution for financial gain.  Other individuals who contemplate committing offenses similar to those of the defendant – whether by offering bribes to public officials, or taking them – should know that such crimes are serious and will not be ignored.  These concerns weigh heavily here, where a substantial sentence is necessary to restore public confidence that the NYPD officers charged with administering the City's gun laws are doing so with integrity and impartiality.

Lastly, Dean has taken steps to disclose additional information to the Government since his arrest in 2017, and this effort merits consideration by the Court under Section 3553(a).  The Government agrees that it often requires courage to cooperate in criminal investigations and that such steps should be encouraged through appropriate consideration in imposing sentence. Unfortunately, the Government was not able to extend a cooperation agreement to Dean.  Among other things, certain of Dean's claims could not be corroborated by the time he sought to cooperate, and other conduct that he reported to the Government, even if true and unethical, did not rise to the level of a federal crime.  In addition, the Government cannot credit certain of Dean's statements, particularly the more self-serving ones.  For example, the Government disputes Dean's characterization that he sought to abandon the scheme in January 2016 by helping report concerns to Inspector Endall, the very officer Dean inculpates for much of the misconduct.  (Def. Mem. 7.)

Regardless, Dean must face consequences for his crime.  Dean was a knowing and willing participant in the criminal conduct at issue, not a scapegoat.  The conduct of others involved in the offense should not distract the Court from the severity of Dean's crime.  Indeed, the defendant's conduct seriously and intolerably impacted a core public trust—the responsibility of sworn law enforcement officers to exercise their authority honestly and impartially, and to make decisions on firearms matters based on the law and the needs and public safety of the city, not on their own personal interests and hope of financial gain.  In particular, Dean was a supervisor in the NYPD who not only accepted bribes, but offered to pay more bribes to his own subordinate NYPD officers when he retired.  Dean's dereliction of duty and role in perpetuating a cycle of bribery and corruption at the License Division must be met with a substantial sentence to restore respect for the law, provide just punishment, and deter others.

## IV.    Forfeiture

The Government seeks forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, of $1,000, representing the property which constitutes or is derived from proceeds traceable to the commission of the offenses of conviction.  The Government submits that this

amount is a conservative valuation representing merely the cash obtained by the defendant in connection with, and traceable to, relevant conduct relating to the offense for which he was convicted.  *See United States* v. *Daugerdas*, No. S3 09 Cr. 581 (WHP), 2012 WL 5835203, at *2 (S.D.N.Y. Nov. 7, 2012) (proceeds are "'property that a person would not have but for the criminal offense'" (quoting *United States* v. *Grant*, No. S4 05 Cr. 1192 (NRB), 2008 WL 4376365, at *2 n.1 (S.D.N.Y. Sept. 25, 2008))).

## V.    Conclusion

For the reasons set forth herein, the Government submits that a Guidelines sentence is appropriate in this case.  The Government further requests that the Court impose a fine consistent with the Guidelines, and order forfeiture in the amount of $1,000.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Kimberly J. Ravener
Assistant United States Attorney
Southern District of New York
(212) 637-2358


Cc:    Abe George, Esq., *counsel for defendant* (via ECF)