

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 9, 2020

By ECF

The Honorable Edgardo Ramos
United States District Judge, S.D.N.Y.
40 Foley Square
New York, New York 10007

Re:   United States v. Paul Dean
      17 Cr. 398 (ER)

Dear Judge Ramos:

The Government writes in response to defendant Paul Dean's motion dated April 3, 2020 requesting compassionate release from incarceration pursuant to 18 U.S.C. § 3582(c)(1)(A). In his submission, Dean concedes that he has failed to exhaust his administrative remedies. Because such exhaustion of administrative remedies is mandatory, the court lacks the authority to grant compassionate release at this time. Furthermore, because Dean cites no specific basis for relief beyond the general threat posed by COVID-19, he has not demonstrated an "extraordinary and compelling reason" that warrants reducing his sentence.

**I.     Dean's Motion**

By Dean's account, he first filed his application to the Bureau of Prisons barely eight days ago, on or about March 31, 2020, and received a prompt response from regarding the Bureau of Prisons' procedures in response to COVID-19 just three days later, on or about April 2, 2020. (*See* Dkt. No. 96 at 2 & Ex. D.) Contrary to Dean's characterization, the letter plainly did not deny Dean relief. (*See* Dkt. No. 96, Ex. D at 2.) Indeed, Dean filed a subsequent letter seeking relief on or about April 6, 2020, which he concedes is pending before the Bureau of Prisons. (Dkt. No. 96, Ex. E.)

Dean acknowledges that he is in "relatively good health" and "does not have any comorbidities to the virus." (*See* Dkt. No. 96 at 1, 3.) Dean is currently incarcerated in a facility, USP Canaan in Pennsylvania, where only a small number of COVID-19 cases have been reported to date. (*Id.* at 1 (noting that one inmate and one staff member had tested positive for COVID-19 as of April 6, 2020).)

## II.     Dean's Failure to Exhaust Administrative Remedies is Fatal to His Motion

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." *Id.* § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Section 3582(c)(1)(A)'s exhaustion requirement is therefore mandatory. It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). By significant contrast, *statutory* exhaustion requirements "stand[] on a different footing." *Id.* There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id.*; *see also Bastek v. Fed. Crop. Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text.").

As described above, Section 3582(c)(1)(A) contains mandatory exhaustion language with no statutory exceptions. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights" or waited 30 days after transmitting his request to the warden. Unlike the Prison Litigation Reform Act, for example, there is no statutory qualifier that a defendant need only exhaust all "available" remedies. [1] Thus, Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims). For this reason, as Judge Cote has explained, this court lacks the authority to grant the defendant's motion at this time. *United States v. Monzon*, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020).

In recent weeks, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that the exhaustion requirement should be excused. The only court of appeals to have addressed the

---

[1] In particular, the PLRA demands that an inmate exhaust "such administrative remedies *as are available*," meaning that the only permissible exception to exhaustion is where the remedies are "unavailable." *Ross,* 136 S. Ct. at 1856-58 (emphasis added); *see also id.* at 1855 (criticizing the "freewheeling approach" adopted by some courts of appeals to exhaustion requirements, and overruling precedent from the Second Circuit and other circuits that had read additional exceptions into the rule). Here, no such exception exists in the statute.

question has rejected the argument and required exhaustion. *See United States v. Raia*, __ F.3d __, 2020 WL 1647922, at * (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at *2. The vast majority of district courts have also required exhaustion despite COVID-19 claims.[2] These decisions are consistent with the plain language of Section 3582(c).

Clearly, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception in two respects. First, while many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This alternative suggests that the Congress recognized that even if compassionate release requests cannot always await the full administrative process to be completed, the BOP should have at least 30 days to act on such a request. Second, in cases presenting the most urgent circumstance – inmates diagnosed with a terminal illness – Section 3582(d) requires the BOP to process any application for compassionate release in 14 days. That the Congress allowed 14 days to process the claims of even a terminally ill inmate suggests that it could not have intended to allow a shorter period – which excusing exhaustion would provide – in a case, such as this, where the risk to the inmate, while serious, remains potential.

As the Third Circuit properly recognized, the mandatory exhaustion requirement accommodates the valuable role that the BOP plays in the compassionate release process. Informed decisions about compassionate release require the collection of information, like disciplinary records and medical history, that the BOP is uniquely suited to obtain and which will benefit both the BOP and later the court evaluating such claims. The BOP is also well situated to make relative judgments about the merits of compassionate release petitions—particularly at a time like this when many inmates are making petitions advancing similar claims—and adjudicate those positions in a consistent manner. The court may of course review those judgments, but the Congress

---

[2] *See United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020); *United States v. Carver*, No. 19 Cr. 6044, 2020 WL 1604968, at *1 (E.D. Wa. Apr. 1, 2020); *United States v. Clark,* No. 17 Cr. 85 (SDD), 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020); *United States v. Williams*, No. 15 Cr. 646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Zywotko*, No. 19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Eberhart*, No. 13 Cr. 313 (PJH), 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, *3 (D. Conn. Mar. 19, 2020). *But see United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, No. 19 Cr. 179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020). Both *Perez* and *Colvin* relied on *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), which as discussed further below, is inapposite because it involves judge-made exhaustion doctrine.

expressed its clear intent that such review would come second, with the benefit of the BOP's initial assessment.

To ignore this mandatory exhaustion requirement would be legal error.

*Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019) is inapposite. That case involved the invocation of a *judge-made* exhaustion doctrine. *See id.* at 116 (stating that the statute in question "does not mandate exhaustion of administrative remedies" but finding that exhaustion requirement was nevertheless appropriate); *id.* at 118 ("Although not mandated by Congress, [exhaustion] is consistent with congressional intent."). Thus, it was appropriate for the court to consider judge-made exceptions. *See Ross*, 136 S. Ct. at 1857. But this case involves a mandatory, statutory exhaustion requirement, which allows for no such exceptions. *See Bastek*, 145 F.3d at 95 (rejecting application of various exceptions to exhaustion requirement where clear statutory requirement exists); *Theodoropoulos v. INS*, 358 F.3d 162, 172 (2d Cir. 2004) (rejecting futility exception to exhaustion requirement in Immigration and Nationality Act because such an exception is "simply not available when the exhaustion requirement is statutory," as opposed to judicial); *United States v. Gonzalez-Roque*, 301 F.3d 39, 46-48 (2d Cir. 2002) (rejecting argument that statutory exhaustion requirement for collaterally attacking a removal order should be excused in light of defendant's *pro se* status in removal proceedings).

To be sure, *Washington* states that: "Even where exhaustion is seemingly mandated *by statute or decisional law*, the requirement is not absolute. The Supreme Court itself has recognized exceptions to the exhaustion requirement under 'three broad sets of categories.'" *Washington*, 925 F.3d at 118 (emphasis added) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). But the inclusion of the phrase "by statute" is not supported by the citation that follows. *McCarthy* is another case involving a judge-made exhaustion requirement. *See McCarthy*, 503 U.S. at 152 ("Congress has not *required* exhaustion of a federal prisoner's *Bivens* claim."). It thus provides no support for the notion that exhaustion mandated "by statute" is not absolute. *See Bastek*, 145 F.3d at 95 (rejecting application of *McCarthy* exceptions in a statutory case). Further, when *Washington* goes on to discuss three recognized exceptions to exhaustion, it is describing three exceptions recognized in *McCarthy* in the judge-made context. But as the Supreme Court made crystal clear in *Ross*, this ignores the critical distinction between statutory and judge-made exhaustion requirements. Given that *Washington* was a judge-made exhaustion case, its statement that exhaustion mandated "by statute" is "not absolute" is dicta, and cannot supplant the clear statements to the contrary in cases like *Ross* and *Bastek*.

Thus, Judge Torres erred by citing *Washington*'s discussion of judge-made exceptions to a judge-made exhaustion rule to justify excusing exhaustion under Section 3582(c). *See United States v. Perez*, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (relying on *Washington*).

In sum, the analysis of a statutory exhaustion requirement must "begin[] with the text" and utilize "ordinary interpretive techniques." *Ross*, 136 S. Ct. at 1856 and 1858 n.2.  As set forth above, the text of Section 3582(c) provides for no exceptions.

### III.     Dean Fails to Demonstrate Any "Extraordinary and Compelling Reason" Justifying Release

Dean's motion should also be denied on its merits. As the proponent of the motion, the defendant bears the burden of proving "extraordinary and compelling reasons" exist under the above criteria to justify early release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."). Dean plainly fails to meet that burden.

Without a doubt, COVID-19 poses a serious threat worldwide, both within Bureau of Prisons facilities and to the community at large. But Dean provides no reason why the COVID-19 threat poses risks to him personally any more than the general prison population, let alone any basis to find that it constitutes an "extraordinary and compelling reason" for his release. Dean concedes that he is in good health and does not possess any particular attributes that make him uniquely vulnerable to the threat of COVID-19.  (*See* Dkt. No. 96 at 1, 3.) Dean does not allege that he has been exposed to any individuals with COVID-19 or currently has any symptoms, and acknowledges that at his institution, there currently are only two reported cases of COVID-19. (*See* Dkt. No. 96 at 1.) By Dean's logic, any and all inmates should be immediately released because of the pandemic. That is not and cannot be the law.

Granting the defendant's request would not comport with the purposes of sentencing—here, principally the seriousness of the offense and the need for general deterrence—and would not be appropriate based on Dean's highly generalized concerns. *See, e.g.*, *United States v. Credidio*, No. 19 Cr. 111 (PAE), ECF No. 62 (S.D.N.Y. Mar. 30, 2020) (denying motion for compassionate release and reduction of sentence to home confinement in light of COVID-19 pandemic for 72-year old defendant sentenced in Feb. 2020 to 33 months' imprisonment because lengthy term of imprisonment was required for reasons stated at sentencing).

### Conclusion

The Court should deny the defendant's motion on the basis that he has failed to exhaust his administrative remedies and the Court lacks the authority to grant compassionate release at this time. Even if the Court had such authority, it should deny the defendant's motion because the defendant has not demonstrated an "extraordinary and compelling" reason to modify his sentence for an extremely serious crime that breached the public's trust.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: s/ Kimberly J. Ravener
    Kimberly J. Ravener
    Assistant United States Attorney
    (212) 637-2358

cc:     Abraham George, Esq.