# LAW OFFICES OF ABE GEORGE, P.C.

40 Wall Street, 60th Floor
New York, NY 10005
(P) 212-498-9803 (F) 646-558-7533
Email: abe@abegeorge.lawyer

April 9, 2020

**Via ECF**
The Honorable Edgardo Ramos
United States District Judge, S.D.N.Y.
40 Foley Square
New York, New York 10007

      Re:    *U.S. v. Paul Dean, et. al.,* 1:17-cr-00398-ER
              Emergency Application for Sentence Modification

Dear Judge Ramos:

      I write on behalf of Paul Dean in reply to the Government's opposition to Mr. Dean's request to be moved from incarceration at USP Canaan ("Canaan") to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A).

## I.    Update on Paul's Condition

      Since writing the Court on April 6, 2020, things have dramatically changed at Canaan. According to the BOP Corona website there are now 3 staff members, rather than one, that have tested positive for COVID-19[1]. ***See Exhibit A***: Print out from BOP. Further, upon information from Paul and another attorney representing inmates at Canaan, an inmate who was sleeping less than 15 feet away from Paul was removed because BOP staff felt that the inmate was exhibiting symptoms of the Corona virus. Paul and his fellow inmates have not been tested for COVID-19 since that inmate's removal. Paul's current sleeping arrangements would exacerbate the spread of COVID-19. Paul describes his sleeping area as a rectangular open layout approximately 30 feet by 100 feet with 120 inmates sleeping in bunk beds in close proximity to one another---there is no ability to socially distance at night.

      According to a local Pennsylvania news channel as of April 9, 2020, there are now 18,228 positive cases of COVID-19, which are 2000 more cases than April 8, 2020, which is the largest single jump since the day before.[2] Officials announced 1,989 new positive cases on April 9, 2020, with 29 new deaths, bringing the statewide death total to 338.[3] These numbers show that Pennsylvania has not reached its apex yet, which may explain why there was an increase in staff being tested positive.

---

[1] The Bureau of Prisons' website tracking COVID-19 can be found at https://www.bop.gov/coronavirus/

[2] https://www.wtae.com/article/coronavirus-cases-in-pennsylvania/31291493#

[3] https://www.wtae.com/article/coronavirus-cases-in-pennsylvania/31291493#

## II. The Government Does Not Have a Good Reason to Oppose Paul's Motion

The Government argues that Paul hasn't fully exhausted his administrative remedies and further argues that this Court is powerless to make any exceptions because the exhaustion requirement is statutory, despite some judges in this circuit having found that the exhaustion requirement can be waived. In citing, *United States v. Raia*, 2020 WL 1647922, (3d Cir. Apr. 2, 2020), the Government argues that the reason for the mandatory exhaustion requirement is to accommodate the valuable role that the BOP plays in the compassionate release process. However, this argument stands at odds with the position of the Government in other cases pending in this district. In the recently decided case of *United States v. Villanueva*, 2020 U.S. Dist. LEXIS 61908 (S.D.N.Y. Apr. 6, 2020), where the defendant had also not satisfied his exhaustion requirements, the Government argued that they could solely choose to waive the exhaustion requirement (although the ability to waive the exhaustion requirement is also not based in the statute) without regard for what BOP's input may have been for defendant Villanueva.

Despite the Government's current objections to Paul's release, surprisingly when given the opportunity to oppose Paul's release to a half-way house in January of 2020 the government did not oppose Paul's transfer. Ultimately Paul was rejected from placement because of the Paul's status as a former police officer made it risky for his placement in the half-way house. If the Government was not opposed to Paul's release from incarceration in January, why in the middle of a pandemic would the Government oppose Paul's request to be confined at home where he could care for himself better than he could at Canaan.

## III. Conclusion

I have spoken to Paul at least four times in the last 10 days, and I have known Paul now for almost 3 years and I have never known Paul to be the type of person to easily be scared, but there is palpable fear in his voice. Paul has three children including a young minor whom he used to take care of, he has survived the health ailments that some of his fellow officers that helped with the 9/11 disaster relief have succumbed to, and simply put Paul does not want to fall victim to an "invisible enemy" in a place where he can't properly protect himself or seek adequate treatment.

Obviously, Paul was convicted of a very serious crime, but it was a non-violent crime and after reviewing the 3553(a) factors this Court sentenced Paul to the minimum range of jail time he could face based upon his plea, likely considering that Paul had a twenty-year career in public service with the NYPD. Paul is simply asking that the Court, based on humanitarian reasons, to expedite his transfer to home confinement which he would be eligible for anyway in less than 30 days.

        Respectfully Submitted,

        Law Offices of Abe George, P.C.
        ___/s/ Abe George_____
        By: Abe George

cc: All Parties by ECF